IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

JAMES RYAN RODGERS,
ADC #109916                                                                                          PLAINTIFF

4:07CV00106JLH/HDY

WHITE COUNTY DETENTION
CENTER, et al.                                                                                      DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to Chief United States District Court Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than eleven (11) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or

1

>other non-testimonial evidence desired to be introduced at
>the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite 402
>Little Rock, AR 72201-3325

## DISPOSITION

A trial was held in this case before the Court on November 5, 2007. Following a presentation of the testimonies of the parties and witnesses, and submission of exhibits, the Court enters the following Proposed Findings and Recommended Disposition.

### I. Introduction

Plaintiff, a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC), filed this action pursuant to 42 U.S.C. § 1983, alleging failure to protect, excessive force, and cruel and unusual punishment by defendants while he was incarcerated at the White County Detention Center in November, 2006. Specifically, plaintiff's failure to protect claim concerns the placement of another inmate with him in his cell, while both were shackled and cuffed, and the other inmate's ability to remove his cuffs, thereby frightening the plaintiff. His excessive force claim concerns an incident involving defendants Williams, Jones, and Bishop, in which plaintiff alleges that the Jail officers came into his cell and beat and choked him. His cruel and unusual punishment claim concerns alternative meals which he was fed for three and one-half days that he alleged were not edible. Defendants are Denny Bishop,[1] Jailer Justin Williams and Jailer Davie Jones. Plaintiff requests monetary relief from the defendants.

---

[1] Defendant Bishop was never served with a copy of plaintiff's complaint.

## II.  Factual Findings

### A. Failure to Protect

Plaintiff was incarcerated at the Jail from November 13, 2006 - November 22, 2006.  He testified that when he was booked into the Jail he asked that he be placed on suicide watch, and was placed in a cell by himself.   He stated that the defendants came to his cell the next day and placed him in cuffs and shackles, and then placed another inmate, Eric Snowden, in the cell with him.  Plaintiff stated he told defendants he did not want another inmate in a cell with him.  Plaintiff further stated that inmate Snowden, who also was cuffed and shackled,  was able to remove his cuffs, and  that defendants would have heard the cuffs hit the concrete floor when they dropped off him.  However, plaintiff states that defendants failed to remove Snowden from his cell.

Inmate Snowden testified he was placed in plaintiff's cell for three and one-half days and admitted that he was able to remove his cuffs a couple of times.  He stated this scared the plaintiff, prompting plaintiff to scream to get Snowden out of there because he thought Snowden would kill him.   Defendant Davie Jones testified inmate Snowden was placed in plaintiff's cell because of a lighting or electrical problem in Snowden's cell, and that both inmates were cuffed.

### B.  Excessive Force

Plaintiff testified that the first evening after Snowden was placed in his cell, defendants Jones and Williams came to his cell and choked him until he passed out, for no reason.  Since that time, plaintiff states he suffers from migraine headaches, dizziness and spells of unconsciousness.

Plaintiff testified that he was incarcerated on this occasion pursuant to a disorderly conduct charge, that he had been incarcerated at the Jail "a bunch" of times previously, that all employees were familiar with him, and that he did not cause problems at the Jail.

Inmate Snowden testified that one evening a "white dude" came into their cell, jumped on

the plaintiff, and choked him "pretty good", although he did not remember the officer's name. When he was asked whether defendants Jones or Williams was the officer who choked plaintiff, Snowden stated that although he knew defendant Jones, who was black, he did not know defendant Williams and did not know his name, and was told at the time that the officer who choked plaintiff was new and came from another state. Snowden also stated that after plaintiff was choked, he turned to Snowden and said, "Man, I thought they were going to kill me."

Defendant Jones testified that after inmate Snowden was placed in plaintiff's cell, plaintiff became disorderly, continued to yell that Snowden was going to kill him, and kicked and banged in his cell. Once when Jones was returning from his "rounds," he heard Plaintiff yelling that Snowden was out of his cuffs and presenting a threat. Jones went to Plaintiff's cell with the intent of ensuring that Snowden's cuff were still secure. Jones stated that, when he arrived, another non-party officer named Armstrong, went into the cell and pushed plaintiff out of the way and on top of Snowden, who was laying on his bed. At that point, Jones tried to assure Snowden that they were not there for him (Snowden did testify that the officers re-secured his cuffs on this occasion), and plaintiff was told to remain seated as the officers exited the cell. As the officers were exiting the cell, plaintiff jumped up toward Armstrong. Defendant Jones responded by pushing Plaintiff on the bed, using a minimal amount of force. Defendant Jones denied choking plaintiff.

Defendant Williams, also a Jailer, stated he heard a disturbance and went to plaintiff's cell to assist defendant Jones and Officer Armstrong. He stated he used reasonable force to hold plaintiff down and denied choking plaintiff. Although plaintiff was in cuffs, Williams stated he was not shackled, and could still cause bodily harm while in cuffs, because he had been beating on doors and yelling at the officers.

## C. Cruel and Unusual Punishment

Plaintiff testified that after Snowden was placed in his cell, they were fed a "patty" which "tasted like doo-doo" and was unlike the "five-course meal" which other inmates received.

4

Plaintiff stated he refused to eat this patty, which was provided to him for three and one-half days.

Mykila Wages, who supervised the kitchen at that time, testified that the "patty" or "loaf" about which plaintiff testified, was prepared for inmates with behavioral problems or on suicide watch. She stated it was prepared by taking the same food given to the other inmates, pureeing it in a food processor, together with flour and liquid. The "loaf" was then baked in an oven and contained the same, if not more, calories, as the trays of food provided to the other inmates. Ms. Wages stated that the purpose of this "loaf" was to avoid providing these particular inmates with utensils that might be used as weapons on themselves or others.

Lt. Angelia Smith testified that the captain at the Jail makes the decision about who should be fed the "loaf", for the safety of both the individual involved and the Jail staff.

### III. Legal Conclusions

Initially, the Court notes that it is not completely clear whether at the time of the incident plaintiff was incarcerated as a pretrial detainee or a post-conviction inmate. Claims filed by pretrial detainees are analyzed under the 14th Amendment due process clause, see Bell v. Wolfish, 441 U.S. 520, 535 (1979). However, it appears that the same Eighth Amendment standard applies for both pretrial detainees and convicted inmates. In Perkins v. Grimes, 161 F.3d 1127, 1130 (8th Cir. 1998), the court applied the deliberate indifference standard to a pretrial detainee's claim of failure to protect:

> To show deliberate indifference, the prisoner/detainee must prove both that the official's acts objectively caused a sufficiently serious deprivation and that the official had a subjectively culpable state of mind. With respect to the latter requirement, the prisoner/detainee must prove that the official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that the official drew that inference.

With respect to plaintiff's claim for failure to protect against the defendants, the Court finds no testimony or evidence was presented to show that defendants were aware that Snowden was a threat

to plaintiff or any other inmate. In addition, plaintiff provided no evidence that he was ever actually threatened or harmed by inmate Snowden. Therefore, nothing supports a finding that defendants were aware of facts from which an inference could be drawn that plaintiff was subject to a substantial risk of serious harm.

With respect to his claim of excessive force against defendants, the pretrial detainee standard for the Court is one of "objective reasonableness". In Moore v. Novak, 146 F.3d 531, 535 (8th Cir. 1998), the Court held, "the question for the [factfinder] is whether, judging from the perspective of a reasonable officer at the scene..., the totality of the circumstances justifies the use of the force used." If plaintiff was incarcerated post-conviction, however, the Court must determine if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995, 999 (1992).

In this particular case, regardless of whether plaintiff was a pretrial detainee or post-conviction inmate, no credible evidence was presented that defendants used excessive force against plaintiff. Although plaintiff claims to have been choked into unconsciousness for a period of time, inmate Snowden contradicted this assertion by testifying that immediately after the defendants left their cell, plaintiff said he thought they were going to kill him. In addition, the Court finds credible defendants' testimony that the amount of force used to subdue plaintiff was objectively reasonable under the circumstances, and no evidence was presented that they acted maliciously or to cause harm. Defendants testified that plaintiff had been disorderly in his cell and had been yelling, kicking and banging throughout the day, and no evidence was presented to show that defendants intended to harm plaintiff when they entered his cell to subdue him. The wrestling which led to him being pushed to the bed and held down by the officers was in response to his disobedience to the officers' instructions to remain seated while they exited the cell. There is no credible evidence in the record that they would have pushed him to the bed and held him down if he hadn't stood up in

an aggressive manner toward Armstrong.

Finally, the Court finds no evidence to support plaintiff's cruel and unusual punishment claim with respect to the meals served to him for three and one-half days. Regardless of whether plaintiff was a pretrial detainee or post-conviction inmate, the standard for this claim is the same: whether defendants were deliberately indifferent to plaintiff's health and safety. See Whitnack v. Douglas County, 16 F.3d 954, 957 (8th Cir. 1994). A prison official acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 832 (1994). This standard involves an objective component, which requires the deprivation to be sufficiently serious, and a subjective component, which requires that the defendant acts with a sufficiently culpable state of mind. Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998). Plaintiff admitted that he asked to be placed on suicide watch, and the kitchen supervisor stated that they were directed to prepare and serve the alternative meals to inmates with behavioral problems or on suicide watches. In addition, the supervisor, Ms. Wages, testified that the loaf was comprised of the same food served to other defendants, and had been approved by a dietician. Finally, Ms. Smith testified that the captain (a non-party) was the official who made the determination that plaintiff was to be served the alternative meal. Therefore, again, the Court finds no evidence that defendants knew of, yet disregarded, an excessive risk of harm to plaintiff's health and safety.

### III. Conclusion

In conclusion, the Court finds that plaintiff does not prove his claims against defendants by the preponderance of the evidence, and that defendants should have judgment against plaintiff on his claims against them. Accordingly,

IT IS, THEREFORE, RECOMMENDED that defendants have judgment against plaintiff and this case be DISMISSED with prejudice.

IT IS SO RECOMMENDED this __13__ day of November,  2007.

_____
United States Magistrate Judge